IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| DANIEL W. NUEY, SR., | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No. 1:19-cv-104-MSM-LDA |
| | : | |
| THE CITY OF CRANSTON, by and | : | |
| through its Mayor, Allan W. Fung | : | |
| and Finance Director, Robert Strom | : | |
| in their Official Capacities, | : | |
| Defendant | : | |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Daniel W. Nuey, Sr., was a Cranston police sergeant, having entered the Department in July 2004 and received a promotion to sergeant in August 2011. He is a Cranston resident, an African American, and a member of the Mashpee Wampanoag Indian tribe.[1]  (ECF No. 1 ¶ 2,7.)  On June 25, 2013, Sgt. Nuey suffered a work-related disability.  (*Id.* ¶8,9).  After a period on Injured On Duty ("IOD") status, receiving IOD salary, Sgt. Nuey applied for a disability retirement pension under the Municipal Employees Retirement System ("MERS"), R.I.G.L. § 45-21.2-1 *et seq.*  There are two types of disability retirements related to this case.  One is for an ordinary disability retirement ("ODR") and the other is for a disability that is

---

[1] In keeping with the Court's responsibilities on a motion brought pursuant to Fed. R. Civ. P. 12, the Court assumes the truth of all well-pled allegations in the Complaint.

work-related ("ADR").  On December 8, 2014, Sgt. Nuey applied for the latter, whose benefits are higher.  (*Id.* at ¶¶ 18-20.)  Two years later, without having received any retirement benefits at all, he applied for an ordinary disability retirement.  (*Id. at* ¶¶20,21.)  Six months later, MERS denied the work-related disability retirement but approved the ordinary one.  (*Id.* at ¶22).

To this date, Sgt. Nuey has received no disability retirement pension payments of either type.  He failed to process his retirement after the ODR was approved and, on May 12, 2017, the City terminated him.  (*Id.* at ¶¶ 12, 26.)

The parties then commenced litigation in the state superior court, Cranston having filed to enjoin the police union's move to arbitrate the dispute, taking the position that Nuey was a retired employee not eligible to arbitrate.  The Rhode Island Supreme Court ultimately ruled that Nuey's "retirement" was not effective, reasoning that his failure to take the final steps to process the retirement deprived it of the mutuality it requires.  The Court reasoned that he was not retired, *was* therefore still a member of the bargaining unit and, as a result, it upheld the superior court's decision compelling arbitration.  *City of Cranston v. Intern'l Brotherhood of Police Officers, Local 301, et al*, 230 A.3d 564, 571 (R.I. 2020).[2]

---

[2] The parties have quibbled about what the Court may consider in ruling on this motion.  Among the contested documents is the Rhode Island Supreme Court's decision, and other documents relating to the MERS decision and travel of Sgt. Nuey's employment status.  By Order of Sept. 30, 2020, the Court denied the City's Motion to Strike and Allowed the Citation of Supplemental Authority filed by the plaintiff.  Without converting the Motion to Dismiss to a Rule 56 Motion for Summary Judgment, the Court may consider any document whose authenticity is not disputed and which is central to the events at issue.  *Carrero-Ojeda v. Autoridad de Energia Electrica,* 755 F.3d 711, 716-17 (1st Cir. 2014).

Meanwhile, in March 2019, Sgt. Nuey had filed this action pursuant to 42 U.S.C. § 1983, contending that the City's termination of his employment in May 2014 was motivated by discriminatory intent, violating his right to due process, his rights under the Americans with Disabilities Act ("ADA"), his right to be free from age discrimination under the Age Discrimination in Employment Act ("ADEA"), and Title VII of the Civil Rights Act of 1964 (based on race and national origin). Because the arbitration issue was then pending decision from the Rhode Island Supreme Court, this Court on Dec. 5, 2019, issued an Order temporarily staying further proceedings. The Rhode Island Supreme Court issued its decision as recounted above, the stay was lifted on Sept. 30, 2020, and the Motion to Dismiss is ripe for decision.

## I.    JURISDICTION AND STANDARD OF REVIEW

Jurisdiction lies as a federal question, 28 U.S.C. § 1331, pursuant to 42 U.S.C. § 1983 and the anti-discrimination statutes cited above. Only Counts I and IV are currently before the Court, as Counts II and III were voluntarily dismissed on Dec. 5, 2019, leaving only the claims for wrongful termination as a matter of due process, and discrimination on the basis of race and national origin.

The Motion to Dismiss is predicated on procedural grounds, involving questions of law not the sufficiency of the Complaint to state a plausible claim. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). When ruling on questions of law that underlie a 12(b)(6) motion to dismiss, "all reasonable inferences" are drawn in favor of the plaintiff. *Abdallah v. Bain Capital LLC,* 752 F.3d 114, 117 (1st Cir. 2014).

## II.   QUESTIONS PRESENTED

Cranston has moved to dismiss this action on various grounds which are addressed in turn.  Several of them turn on the requirement that a plaintiff bringing a Title VII discrimination action first exhaust the remedies available to him through administrative proceedings.[3]   That means that the plaintiff must first bring his complaint to, in this case, the Rhode Island Human Rights Commission (ECF No. 8-2), and give that body an opportunity to adjudicate it.  The exhaustion requirement does not affect the § 1983 due process claim, but, if not fulfilled, would be a barrier to the Title VII employment discrimination claim.  *Martinez Rivera v. Commonwealth of P.R.,* 813 F.3d 69, 74 (1st Cir. 2016); *Jorge v. Rumsfeld,* 404 F.3d 556, 564-65 (1st Cir. 2005).

### A.  Did Sgt. Nuey exhaust his claim of national origin discrimination?

This contention need not consume our attention, as Sgt. Nuey has conceded he did not.[4]   His administrative complaint did not check off the box for national origin, and he is therefore precluded from pursuing that claim here.  *Velazquez-Ortis v. Vilsack,* 657 F.3d 64, 71-72 (1st Cir. 2011) (where complainant charged only age discrimination, he had not exhausted a claim for discrimination based on gender).

---

[3] The First Circuit has held that exhaustion is not a jurisdictional prerequisite, but merely a "precondition" to the filing of a lawsuit.  *Martinez-Rivera,* 813 F.3d at 78. No exhaustion is required on the § 1983 claim.  *Id.* at 74.

[4] Counsel for Sgt. Nuey conceded this point at the hearing held on the Motion to Dismiss.

### B. Did Sgt. Nuey fail to exhaust by not presenting his claim to the Cranston City Council?

R.I.G.L. § 45-15-5 provides that a claimant for damages against a municipality may pursue an action only if an account has been presented to the municipality and gone unsatisfied for forty (40) days. *Perez v. Town of North Providence,* 256 F. Supp. 3d 139, 146 (D.R.I. 2017), held that this statute governs only state court actions for damages, not federal court ones. Chief Judge John J. McConnell, Jr. based that conclusion on *Felder v. Casey,* 487 U.S. 131, 153 (1988), which held, in the context of a § 1983 action, that failure to comply with Wisconsin's presentment statute did not bar the federal court action. This Court agrees with *Perez* and declines to grant the Motion to Dismiss on this ground.

### C. Does Sgt. Nuey's failure to receive a "right to sue" letter from the United States Department of Justice constitute a failure of exhaustion?

Exhaustion of administrative remedies has two steps. First is the timely filing of a complaint, which Sgt. Nuey satisfied here when he filed a claim with the Rhode Island Commission for Civil Rights ("the agency") within 180 days of the alleged discriminatory action. *Jorge,* 404 F.3d at 564. The second is that the complainant-plaintiff pursue the administrative action, giving the agency time to investigate and resolve the alleged wrong.

The investigation by the administrative agency can have one of four possible outcomes: three substantive and one procedural. The agency may, after investigation, find "no probable cause" to pursue the complaint. In that event, the agency, through the Equal Employment Occupation Commission ("EEOC"), must

issue a "right to sue letter," which becomes the complainant's entrée to federal court, allowing him or her to file a civil action. Second, the agency may *find* "probable cause" in which case it will issue a formal charge and attempt conciliation of the claim. If it successfully conciliates the complaint, the matter is over, and the parties go home. Third, if the agency *has* found "probable cause" but cannot successfully reach a conciliation, *and if the action is against a government entity,* it will refer the matter to the United States Department of Justice ("DOJ") to enable *that* entity to pursue resolution. The decision by DOJ *not* to pursue a complaint after referral is the third possible substantive outcome and, if that occurs, it is the DOJ that issues the "right to sue" letter as a condition precedent to the complainant's filing in federal court. Finally, a "procedural" outcome occurs if 180 days pass without the agency taking action. In that case, the claimant can request a "right to sue" letter and the agency must issue it.

What happened here was none of these. Instead, long after the 180 days had passed, the agency was apparently notified by Sgt. Nuey that he intended to pursue redress "in another forum."[5] The agency then dismissed the complaint, sending notice of the dismissal along with its "right to sue" notice on November 29, 2018. (ECF No. 8-4). Nuey filed this action 90 days later. The City of Cranston argues that this notice was ineffective because it was not issued by the DOJ.

---

[5] The record lacks both the method and contents of that notification. At the hearing on this Motion, neither party described it. Thus, the Court does not know whether it was termed by Nuey a "withdrawal" of his Complaint, or whether he pointed out the failure of the agency to go forward within 180 days and requested a "right to sue" letter.

The issue here can be framed as, "where is the default?"  The statute delineates the occasions when it is the DOJ that must issue the "right to sue" letter:

> In the case of a respondent which is a government, governmental agency, or a political subdivision, … if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission … shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court.  If … the attorney General has not filed a civil action in a case involving a government, governmental agency, or a political subdivision, the Attorney General … shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent … by the person claiming to be aggrieved.

42 U.S.C. § 2000e-5(f)(1).

> It also describes the occasion when it is the agency that must issue it.

> If a charge filed with the Commission pursuant to subsection (b) is dismissed by the Commission, or if within one hundred and eight days from the filing of such charge … the Commission has not filed a civil action … the Commission … shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent … by the person claiming to be aggrieved …

*Id.*  The question here is which agency must issue the notice when *neither* of the above has happened.  Sgt. Nuey, relying on a footnote in *Franceschi v. United States VA,* 514 F.3d 81, 85 n.4 (1st Cir.  2008), maintains that in all other situations, not described, it is the agency that must issue the letter.  Cranston, to no surprise, argues the opposite.

The ellipses above take the place of much language, and the paragraph speaks to many circumstances, but distilled it implies that a condition precedent to the issuance of a "right to sue" letter by the Attorney General is the inability of the agency

7

to "secure from the respondent a conciliation agreement acceptable to the commission." *Id.* The commission would only *attempt* a conciliation agreement, however, if it had found probable cause. There is no circumstance described in the statute in which the agency finds *no* probable cause yet refers the matter to the Attorney General. If that is so, how would the Attorney General have sufficient cognizance of the matter to issue a "right to sue" letter?

This interpretation is consistent with the First Circuit's note in *Franceschi*. There, the Court recited the apparent requirement that it is the Attorney General, not the EEOC, "who has the obligation to give notice of a dismissed claim in a case such as this one, where a government agency is involved." *Franchesci,* 514 F.3d at 85, n. 4. However, *Franceschi* then stated, "It is clear, however, that this obligation may alternatively be satisfied by the EEOC where it dismisses an administrative charge at an early stage of the administrative process." *Id.* The reconciliation of any ambiguity is that "the Attorney General will issue such notices *only when* the EEOC finds probable cause, conciliation efforts fail, and the EEOC refers the case to the Justice Department, but the Attorney General decides not to pursue the action. *Id.,* citing *Dougherty v. Barry,* 869 F.2d 605, 612 (D.C. Cir. 1989). That did not happen here. "[T]he statutory language and structure contemplate that the Commission will issue right to sue notices in cases involving a governmental unit when it does not find probable cause." *Dougherty,* 869 F.2d at 611.

In apparent recognition of what may have been difficulty interpreting the statute, the Commission's regulations were amended, at the recommendation of the DOJ, to provide,

> In all cases where the respondent is a government, governmental agency, or a political subdivision, the Commission will issue a notice of right to sue when there has been a dismissal of a charge. … In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue, including … when there has been a finding of reasonable cause by the Commission, there has been a failure of conciliation, and the Attorney General has decided not to file a civil action.  29 C.F.R. § 1601.28(d) (1987).

*Id.*  By the express terms of this regulation, it would be the Commission, as the plaintiff maintains, which would issue the "right to sue" letter.

Cranston has cited *Kane v. State of Iowa DHS,* 955 F. Supp. 1117, 1134 (N.D. Iowa 1997), in support of its insistence that the letter come from DOJ.  There, the case was dismissed by the agency for "administrative inaction."  The Iowa district court said in that event the "right to sue" letter was required to come from the DOJ because the dismissal was not a resolution.[6]

There appears to be a conflict of Circuits on this issue, resolving the "two possible interpretations of the relevant portion of the statute" in different ways. *Hiller v. Oklahoma ex rel Used Motor Vehicle & Parts Com'n,* 327 F.3d 1247, 1250

---

[6] Ultimately, though, the claimant obtained a second "right to sue" letter from DOJ. That she did not have it before filing the federal court action was "curable," the Court held, at least when the defendant suffered no prejudice. *Id.* at 1136. *Accord, Marrero-Rivera v. Dept. of Justice of Comm. of Puerto Rico,* 800 F.Supp. 1024, 1028 (D.P.R. 1992) (failure to have a "right to sue" letter was cured by plaintiff's obtaining of it after filing the lawsuit).

(10th Cir. 2003) (citing *Dougherty* and cases from the Fifth and Eleventh Circuits).
*See Flint v. State of California,* 594 F.Supp. 443, 445 (E.D.Cal. 1984) ("the language
of 42 U.S.C. § 2000e-5(f)(1) is inherently ambiguous.").[7]    This Court, in light of
*Franceschi,,* which is consistent with what appears to be the better interpretation of
the statute in *Dougherty,* declines to follow those cases outside this
Circuit to the contrary.

## D.    Are Sgt. Nuey's claims precluded by *res judicata*?

Cranston argues that Sgt. Nuey's claims of wrongful termination and
discriminatory treatment needed to be raised as compulsory counterclaims to its
action in the state superior court.  If that is the case, Sgt. Nuey would be foreclosed
by principles of *res judicata* from raising them here.  Rhode Island's Rule of Civil
Procedure 13(a) is the same as the federal rule, and a federal court is required to give
the same preclusive effect to a state court judgment that the state court would give
it.  *Perreault v. Fishman,* 998 F.2d 1001 at *1 (1st Cir. 1993) (unpublished).

*Res judicata* precludes a subsequent action to litigate not only claims that *were*
decided in a previous action, but also claims that *should have been* litigated.  *Trustees
of the N.Y. City Dist. Council of Carpenters Pension Fund v. MI Installers &
Furniture Serv., Inc.,* No. 12 Civ. 2362 (VM), 2013 WL 1385791 at *5 (S.D.N.Y. Mar.

---

[7] If the EEOC has not found probable cause, it will not refer the case to the Attorney
General.  *Flint,* concluding that a "right to sue" letter from the EEOC suffices when
the Commission has not found probable cause, asked the same question that puzzles
this Court:  "How, then, does the Attorney General even become aware of the action
in order to send the notice to the plaintiff?  No resolution of the dilemma appears
from the text of the subsection."  *Flint,* 594 F.Supp. at 448.

28, 2013).   There, as here, the defendant had brought a civil action to enjoin the plaintiff from initiating arbitration.   Later, the Fund brought an action claiming MI had made insufficient contributions to the fund.   In ruling against preclusion, the Court held that the earlier action only concerned whether there was a binding arbitration agreement between the two parties, whereas the subsequent lawsuit concerned "the merits of the underlying dispute itself."   While some facts overlapped, the key evidence differed.   *Id.* at 6.

The situation presented here is very similar to that confronted by the New York Court.   The superior court action concerned an issue of law:  was Sgt. Nuey retired because he had requested a retirement, even though he had not processed it?   The instant claims do not implicate that question at all, except to the extent that the ruling by the Rhode Island Courts that Sgt. Nuey did *not* retire is a precondition to his argument that he was involuntarily terminated.   But for that condition precedent, all the issues surrounding his termination implicate a different body of law altogether, a different timetable, different witnesses, and different evidence.   With largely undisputed facts, the state case turned on a question of law; the federal claims will turn on the application of different law to what presumably will be disputed facts. While the fact that Sgt. Nuey was terminated rather than that he voluntarily retired was a component of both actions, the facts of the civil rights complaint in this Court are hardly "intertwined" with MERS' treatment of the applications for disability pensions.   *Compare, Palazzo v. Alves,* 944 A.2d 144, 152 (R.I. 2008) (where facts of

11

subsequent SLAAP suit were intertwined with earlier lawsuit for slander and libel, the SLAPP claim was should have been brought as a counterclaim).

One indication of whether *res judicata* applies is whether a decision in the second action "may contradict the prior adjudication." In *Boateng v. InterAmerican Univ., Inc.,* 210 F.3d 56, 60 (1st Cir. 2000), for example, the plaintiff first sued for denial of tenure, raising breach of contract and discrimination claims. He lost that action but filed a Title VII discrimination suit. Because the contract litigation had determined that the University had fully complied with its contractual responsibilities, and did not impermissibly discriminate, the Circuit noted that a favorable decision in the second lawsuit would contract those findings. Therefore, *res judicata* precluded the Title VII claim. Here, a favorable decision for Sgt. Nuey in *this* litigation would hardly contradict what was determined in his favor in state court. Indeed, a decision here that Cranston wrongfully terminated him would be consistent with the state court's conclusion that, in fact, he *was* terminated and did not voluntarily retire. In addition, the state court action, while not an actual arbitration, was an action to *compel* arbitration and, indeed, the parties have been ordered to proceed to arbitration. Arbitration and a Title VII discrimination claim vindicate separate rights altogether. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 54 (1974). Therefore, when the state court case finally proceeds through arbitration, its result will not have a preclusive effect. *McDonald v. City of West Branch,* 466 U.S. 284, 292 (1984).

Finally, Sgt. Nuey argues that he could not have brought his claim of discrimination under R.I.R.Civ.P. 13(a) because, at the relevant time in the state court proceedings he had not yet received his "right to sue" letter from the EEOC. Thus, because that discrimination claim was not yet exhausted, it was not a "claim which at the time of serving the pleading the pleader has against any opposing party." *Id.* This argument found success in *Stone v. Dept. of Aviation,* 453 F.3d 1271, 1276 (10th Cir. 2006) on nearly identical facts.  In finding that Stone's ADA claim was not "mature" when he filed his answer in a related state court proceeding, the Court noted the inevitability that *had* Stone included the discrimination claim *before* receiving the "right to sue" letter, it would have faced dismissal.  "It seems axiomatic that a party does not have a matured claim, sufficient to be deemed a compulsory counterclaim, if that claim is subject to dismissal because all the conditions precedent to asserting it have not yet occurred."  *Id.   Accord, Ferrari v. E-Rate Consulting Services*, 655 F. Supp.2d 1194, 1201-02 (M.D. Ala. 2009) (although plaintiff's discrimination claim had arisen before she filed her state court answer, it had not matured because she had not received "right to sue" letter and therefore it was not a compulsory counterclaim).   Here, the City controlled the timing of the state court action:  it was *its* action for injunctive relief that propelled the dispute into the superior court.  Sgt. Nuey can hardly be blamed for not having yet perfected his right to sue for discrimination.  And because it was not yet perfected, that claim was not a compulsory counterclaim such that his failure to raise it in his state court answer is *res judicata.*

13

### III.    CONCLUSION

For the above reasons, the Court DENIES the City of Cranston's Motion to Dismiss (ECF No. 8) except with respect to the Title VII claim for discrimination based on national origin.  However, the parties agreed at oral hearing that this matter should be stayed pending the outcome of the arbitration ordered by the state superior court and affirmed by the Rhode Island Supreme Court.   Therefore, this Court enters an indefinite Stay of further proceedings and Orders the parties to file status reports every sixty (60) days while the arbitration is pending.

IT IS SO ORDERED:


Mary S. McElroy,
United States District Judge


Date:  March 8, 2021